476 So.2d 180 (1985)
Alphonso CAVE, Appellant,
v.
STATE of Florida, Appellee,
No. 63172.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied October 21, 1985.
*182 Wayne R. McDonough of Saliba and McDonough, Vero Beach, for appellant.
Jim Smith, Atty. Gen., and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Appellant Cave was convicted of one count each of first-degree murder, robbery with a firearm, and kidnapping. The trial judge followed the jury's recommendation and imposed the death sentence for the first-degree murder. In addition, the trial judge sentenced Cave to concurrent life sentences for kidnapping and robbery with *183 a firearm. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm all convictions and sentences.
The relevant facts are as follows. Cave and three accomplices left Ft. Pierce, Florida, on the evening of April 26, 1982, and drove to Stuart, Florida. They arrived in Stuart at approximately 11 p.m. that evening. The driver, and owner of the car in which all four rode, was John Earl Bush. The other two accomplices were J.B. ("Pig") Parker and Terry Wayne Johnson ("Bo Gator"). At approximately 3 a.m. on the following morning, the four men drove to a convenience store in Stuart. Cave and two of the men entered the store where Cave held a hand gun on the youthful female clerk and demanded the store's cash. The clerk surrendered the cash, whereupon she was taken from the store and placed in the back seat of the car. The men drove her to a rural area approximately thirteen miles away where she was removed from the car by the four men. After leaving the car, one of the men stabbed the victim and, when she fell, another fired a single lethal shot into the back of her head. The men then departed the scene but were stopped approximately an hour later enroute back to Ft. Pierce by police officers because of a defective taillight. They were released at that time but later apprehended when the car and its occupants were linked to the convenience store crime.
Appellant raises thirty-one repetitive and overlapping points, none of which have merit, and few of which warrant extended discussion.[1]

TRIAL PHASE
Appellant urges that the trial court erred in the jury selection process by excluding jurors in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and quotes selected answers from two excluded jurors in support. We have reviewed the complete voir dire of the jurors and it is clear that both veniremen unequivocally stated that their opposition to the death penalty would not permit them to apply the law or view the facts impartially.[2]Wainwright v. Witt, ___ U.S. *184 *185 ___, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980); Witherspoon.
Appellant urges that appellant's confession was involuntarily given as a result of improper influence and that the trial court erred in admitting the confession. The thrust of appellant's argument is that appellant was summoned for questioning in the early morning hours, that he maintained his innocence for approximately two hours but succumbed to pressure when the taped confession of an accomplice which implicated him was played back to him and he was questioned by a black detective who undermined his resistance by obtaining rapport. (Appellant is also black.) The record belies appellant's argument. The accomplice's confession implicating appellant in the crimes was obtained in Stuart, Florida, in the mid to late evening. The police promptly set in motion measures to approach the three accomplices through the police in Ft. Pierce, Florida, and to determine if they would voluntarily talk with the police about their alleged involvement. It was early morning before the men were located. Appellant voluntarily agreed to accompany the police and repeatedly received and acknowledged his Miranda[3] rights. There is nothing in the record to suggest that appellant ever asked for an attorney or that any coercion was involved in obtaining appellant's statement. The taped statement includes the Miranda rights and appellant's acknowledgment of those rights. An initial profession of innocence, without more, does not require that the police cease questioning. When the suspect is informed of, but does not exercise, his rights to remain silent or to obtain counsel, the police may continue their questioning. We find sufficient evidence to support the trial judge's finding that the confession was freely and voluntarily made. Bush v. State, 461 So.2d 936 (Fla. 1984).
Appellant urges that the state relied on the felony murder doctrine as a basis *186 for first-degree murder in violation of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We do not so read Enmund. First, Enmund does not address convictions for first-degree murder; it concerns the sentence of death for such murders. Second, Enmund is factually dissimilar to the instant case as we show below.
In a closely related argument, appellant also urges that the trial court erred in requiring defense counsel to proffer her closing argument during the guilt phase. The record shows that counsel was attempting to argue to the jury that it could not find guilt on first-degree murder unless appellant personally killed the victim. After several objections were sustained, the trial judge removed the jury and directed that the remainder of the argument be proffered. This was appropriate under the circumstances. First-degree felony murder does not require that the accused personally perform the killing. Counsel may not contravene the law and the jury instructions in arguing to the jury.
Appellant urges that the trial court erred in refusing to instruct the jury on second-degree felony murder. We disagree. The evidence shows that appellant was present at all times and was a major actor in the robbery, kidnapping and murder. There was no basis for an instruction on second-degree felony murder. State v. Lowery, 419 So.2d 621 (Fla. 1982).

SENTENCING PHASE
Appellant urges that the trial court erred by incorrectly instructing the jury that a majority vote was required to reach an advisory sentence and that it should tabulate the aggravating and mitigating circumstances in order to reach an advisory sentence. The record does not support this argument. The jury was told that a vote of 6-6 was an advisory sentence of life imprisonment but that a majority vote was required in order to recommend death. Further, the jury was told to weigh the aggravating versus mitigating circumstances, not to merely count them.
During the jury deliberations on the advisory sentence, the jury delivered to the court a note stating:
We are at a split decision. We would like it stated and published to the Court of this advisory sentence. The current form does not allow for this revelation. Please advise.
With the concurrence of both the prosecutor and the defense counsel, the trial court responded:
Under the Instructions I have given you, if by six or more votes the Jury determines that the Defendant should not be sentenced to death, your advisory sentence would be:
The jury advises and recommends to the Court that it impose a sentence of life imprisonment upon the Defendant without the possibility of parole for twenty-five years.
Approximately eight minutes later, the jury reported by a vote of 7-5 that it recommended the death penalty. Based on this exchange, appellant argues that the jury's initial request for advice constituted a 6-6 vote for life imprisonment which the court should have accepted as such. We disagree, noting first that the query referred to a split decision, not a 6-6 vote. Neither the judge nor the parties could know whether the "split decision" referred to an 11-1, 6-6, or 1-11 vote on the death penalty. Thus, the judge's response, with the positive approval and without objection of the defense counsel, was the correct response. We note, further, that after the jury returned its advisory sentence of death, the judge immediately polled each jury member as to whether the advisory sentence was correctly stated and that each member confirmed that it was so.
Appellant also urges the related point that the trial court erred in denying defense counsel's motion to discuss with the individual jurors their thoughts and/or misunderstandings believed to have resulted in the advisory sentence for the death penalty. The circumstances of this motion are as follows. On the day following *187 the dismissal of the jury, when the court convened for sentencing, defense counsel moved the court for a mistrial as to the advisory verdict on the ground that the jury's query to the court on the previous day represented an advisory sentence of life imprisonment. In doing so, defense counsel inaccurately stated to the court that the jury's note "specifically said that the jury was at a six-six tie, and asked the court to advise them accordingly, Judge." Following denial of this motion, defense counsel moved to question all the dismissed jurors individually and to present testimony on statements one or more had allegedly made to the press and to an assistant public defender with regard to the jurors' understanding of the court's response to the query. We agree both with the judge's denial of this motion and with the rationale. The privacy and sanctity of jury deliberations are critical to the right of a jury trial:
[W]here the record does not reveal any misconduct or irregularity on the part of any juror, the case was fairly and impartially tried and each juror is polled and announces the verdict to be his or hers, it is improper to allow jurors to be interviewed. National Indemnity Co. v. Andrews, 354 So.2d 454, 455 (Fla. 2d DCA 1978).
Cummings v. Sine, 404 So.2d 147, 148 (Fla. 2d DCA 1981). This respect for jury deliberations is particularly appropriate where, as here, we are dealing with an advisory sentence which does not require a unanimous vote for a recommendation of death or a majority vote for a recommendation of life imprisonment. To examine the thought process of the individual members of a jury divided 7-5 on its recommendation would be a fruitless quagmire which would transfer the acknowledged differences of opinion among the individual jurors into open court. Those differences do not have to be reconciled; they only have to be recorded in a vote.
Appellant argues that the trial court erred in not precluding the imposition of the death penalty in violation of Enmund. We disagree. In Enmund, the Court held that the death penalty was impermissible under circumstances where an accomplice defendant aided and abetted a felony during which a murder was committed by others but who himself did not kill, attempt to kill, or intend that a killing take place or that lethal force be employed. The instant case is clearly distinguishable. Appellant Cave was the gunman who admits to holding the gun on the clerk during the robbery and forcing her into the car; he was present in the car during the thirteen-mile ride and heard her plead for her life; and he was present when she was forcibly removed from the car in a rural area, stabbed, and shot in the back of the head. Under these circumstances, it cannot be reasonably said that appellant did not contemplate the use of lethal force or participate in or facilitate the murder. Bush; State v. White, 470 So.2d 1377 (Fla. 1985); White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, 463 U.S. 3571, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
Appellant urges that the trial court erred in instructing the jury on aggravating and mitigating factors and in determining that there were three aggravating and no mitigating factors. Appellant argues that it was error not to instruct the jury that his age and minor participation in the murder were mitigating factors. The record does not support this contention. The jury was instructed it would hear evidence on the nature of the crime and the character of the defendant. Defense counsel argued in mitigation that defendant was a young man of twenty-four years whose participation in the murder was minor. The prosecution argued that appellant's age was not mitigating and that he was a major participant. After arguments were concluded, the jury was instructed that among the mitigating circumstances it might consider were any aspect of the appellant's character or record and any other circumstances of the offense. Thus, it was left entirely to the jury, based on the record evidence, to assign whatever weight it wished to appellant's age and degree of *188 participation in the murder. We see no error.
In its sentencing order, the trial court found that the murder was committed while the appellant was engaged in the crimes of robbery and kidnapping; that the murder was especially heinous, atrocious and cruel; and that the murder was committed for the purpose of avoiding a lawful arrest. We agree. The evidence supports the convictions for both robbery and kidnapping. The evidence leaves no reasonable inference but that the victim was kidnapped from the store and transported some thirteen miles to a rural area in order to kill and thereby silence the sole witness to the robbery. The record also shows that she pleaded for her life, and was in such fear that her bladder involuntarily released. There is also evidence that she was maneuvered or controlled by grasping her by the hair, that she suffered a defensive wound to her hand in attempting to avoid being stabbed, and that after being stabbed and falling to the ground she was executed by a single shot to the back of the head.
In addition to reviewing the specific arguments raised by appellant, we have also reviewed the record pursuant to Florida Rule of Appellate Procedure 9.140(f) and conclude that a new trial is not required.
Appellant also urges that his separate convictions for kidnapping and robbery with a firearm, in addition to his conviction for first-degree murder under the felony murder doctrine, violate the double jeopardy clause of the fifth amendment to the United States Constitution. We have recently decided this issue contrary to appellant's position. State v. Enmund, 476 So.2d 165 (Fla. 1985).
We affirm the convictions and sentences.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.

APPENDIX

 Points Presented By Appellant
I. THE TRIAL COURT ERRED IN EXCLUDING CERTAIN PROSPECTIVE JURORS
 ON CHALLENGES FOR CAUSE IN VIOLATION OF WITHERSPOON V.
 ILLINOIS.
II. THE DEATH SENTENCE SHOULD BE VACATED AND THE JUDGMENT
 REVERSED ON THE GROUNDS THAT THE RECORD IS INCOMPLETE IN THAT
 THE TRANSCRIBED COPY OF APPELLANT'S TAPED CONFESSION IS ABSENT
 FROM THE RECORD; FURTHER, THE USE OF SAID EVIDENCE RELIED ON
 BUT NOT INTRODUCED AS AN EXHIBIT AT TRIAL IS ERROR MANDATING
 REVERSAL.
III. THE TRIAL COURT ERRED IN ADMITTING GRUESOME AND INFLAMMATORY
 PHOTOGRAPHS WHICH WERE NOT RELEVANT AND FURTHER SERVED TO
 INFLAME THE JURY AND PREJUDICE APPELLANT.
IV. THE PROSECUTORS MISCONDUCT DURING THE COURSE OF CLOSING
 ARGUMENT IN BOTH THE GUILT/INNOCENCE PHASE AND PENALTY PHASE
 WAS SO EGREGIOUS SO AS TO WARRANT THE GRANTING OF A NEW TRIAL.
V. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF LINEUP
 OF THE ALLEGED ACCOMPLICE BUSH.
VI. THE TRIAL COURT ERRED IN REQUIRING DEFENSE COUNSEL TO PROFFER
 HER CLOSING ARGUMENT AT THE GUILT PHASE.
VII. THE TRIAL COURT ERRED IN DENYING A MISTRIAL ON THE GROUNDS
 THAT AN INVESTIGATOR TESTIFIED AS TO THE SUBSTANCE OF AN
 ACCOMPLICE'S STATEMENT THAT APPELLANT OWNED THE KNIFE WHICH WAS
 USED TO STAB THE VICTIM.
VIII. THE TRIAL COURT ERRED IN ADMITTING APPELLANT'S CONFESSION
*189 WHICH WAS INVOLUNTARILY GIVEN AS A RESULT OF IMPROPER
 INFLUENCE.
IX. THE TRIAL COURT ERRED IN ADMITTING APPELLANT'S CONFESSION ON
 THE GROUND THAT THE STATE FAILED TO ESTABLISH SUFFICIENT CORPUS
 DELICTI PRIOR TO THAT ADMISSION OF SAID CONFESSION.
X. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON CERTAIN
 AGGRAVATING CIRCUMSTANCES AND BY LIMITING THE MITIGATING
 CIRCUMSTANCES PRESENTED TO THE JURY BY FURTHER REFUSING TO
 CONSIDER ALL EVIDENCE RELATIVE TO THE ISSUE OF MITIGATING
 CIRCUMSTANCES.
XI. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY DURING THE
 PENALTY PHASE THAT A MAJORITY VOTE WAS REQUIRED TO REACH AN
 ADVISORY SENTENCE THAT THE JURY WAS TO TABULATE THE AGGRAVATING
 CIRCUMSTANCES IN COMPARISON TO THE MITIGATING CIRCUMSTANCES IN
 ORDER TO ARRIVE AT AN ADVISORY SENTENCE.
XII. THE TRIAL COURT ERRED IN CHARGING THE JURY DURING THE
 PENALTY PHASE IN RESPONSE TO THE JURY'S INQUIRY THAT THE
 ADVISORY SENTENCE FORM DID NOT ALLOW FOR A `SPLIT DECISION'.
XIII. THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION
 TO DISCUSS WITH THE INDIVIDUAL JURORS THEIR THOUGHTS AND/OR
 MISUNDERSTANDINGS BELIEVED TO HAVE RESULTED IN THE ADVISORY
 SENTENCE FOR THE DEATH PENALTY.
XIV. THE TRIAL COURT COMMITTED ERROR BY ENDORSING THROUGHOUT THE
 COURSE OF TRIAL THE STATE'S THEORY OF FELONY/MURDER DOCTRINE,
 BY DENYING APPELLANT'S MOTION TO PRECLUDE DEATH AS A POSSIBLE
 PENALTY AND BY INSTRUCTING THE JURY ON THE THEORY OF
 FELONY/MURDER AS A LEGALLY ACCEPTABLE THEORY IN WHICH A PERSON
 MAY BE CONVICTED OF FIRST DEGREE MURDER.
XV. THE TRIAL COMMITTED FUNDAMENTAL ERROR BY IMPANELING A `DEATH
 SCRUPLED' JURORS IN THE INSTANT MATTER: FURTHER, THE FLORIDA
 DEATH PENALTY STATUTE WHICH REQUIRES THAT THE SAME JURY REMAIN
 IMPANELED AT BOTH THE GUILT/INNOCENCE PHASE AND THE PENALTY
 PHASE IS UNCONSTITUTIONAL.
XVI. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO
 DISMISS THE INDICTMENT AND/OR TO DECLARE THE FLORIDA DEATH
 PENALTY TO BE UNCONSTITUTIONAL AND MOTION TO PRECLUDE AND
 PREVENT SENTENCING UNDER THE FLORIDA DEATH STATUTE.
XVII. THE TRIAL COURT ERRED BY REFUSING TO ORDER THE STATE TO
 ELECT ITS THEORY OF PROSECUTION BETWEEN THE FELONY MURDER
 DOCTRINE AND THE PREMEDITATION THEORY CONTAINED IN THE FLORIDA
 DEATH STATUTE.
XVIII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A
 STATEMENT OF PARTICULARS, STATEMENT OF AGGRAVATING
 CIRCUMSTANCES AND DEMAND FOR DISCOVERY RELATIVE TO SENTENCING.
XIX. THE COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT
 OF ACQUITTAL, MOTION FOR A NEW TRIAL AND A MOTION TO PRECLUDE
 THE IMPOSITION OF THE DEATH PENALTY.
*190 XX. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO
 PRECLUDE DEATH AS A PENALTY DURING THE PENALTY PHASE OF THE
 INSTANT MATTER.
XXI. THE COURT ERRED IN REFUSING TO INSTRUCT THE JURY AS TO THE
 OFFENSE OF SECOND DEGREE FELONY MURDER. APPELLANT'S TRIAL
 COUNSEL REQUESTED THE COURT TO INSTRUCT THE JURY ON THE OFFENSE
 OF SECOND DEGREE FELONY MURDER. HOWEVER, THE COURT REFUSED SAID
 REQUEST AND DENIED APPELLANT'S MOTION IN THAT REGARD.
XXII. THE TRIAL COURT ERRED BY VIOLATING APPELLANT'S FUNDAMENTAL
 RIGHT TO A FAIR AND IMPARTIAL JURY.
XXIII. THE CONVICTIONS AND SENTENCING RELATIVE TO KIDNAPPING AND
 ROBBERY WITH A FIRE ARM SHOULD BE VACATED AND REVERSED ON THE
 GROUND THAT SAME REPRESENTS A VIOLATION OF APPELLANT'S FIFTH
 AMENDMENT RIGHT IN REGARDS TO DOUBLE JEOPARDY.
XXIV. THE TRIAL COURT ERRED BY VIOLATING APPELLANT'S DUE PROCESS
 RIGHTS AND SIXTH AMENDMENT RIGHT TO THE JURY BY PRECLUDING
 DEFENSE COUNSEL FROM PRESENTING VARIOUS FACTS AND CIRCUMSTANCES
 UNDER WHICH THE CONFESSION WAS MADE.
XXV. THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF
 TESTIMONY AT THE GUILT PHASE OF THE TRIAL RELATIVE TO
 STATEMENTS MADE BY APPELLANT'S ACCOMPLICES.
XXVI. THE TRIAL COURT ERRED BY REFUSING TO GRANT FUNDS TO
 APPELLANT, AN INDIGENT, FOR VARIOUS EXPERTS.
XXVII. THE TRIAL COURT ERRED BY NOT DIRECTING A VERDICT RELATIVE
 TO A LIFE SENTENCE AS THE STATE DID NOT ESTABLISH A PRIMA FACIE
 JUSTIFYING THE IMPOSITION OF THE DEATH PENALTY.
XVIII. THE TRIAL COURT ERRED BY NOT GRANTING A JUDGMENT OF
 ACQUITAL IN THAT THE EVIDENCE PRESENTED BY THE STATE WAS PURELY
 CIRCUMSTANTIAL AS TO PREMEDITATED MURDER AND SUCH EVIDENCE DID
 NOT EXCLUDE EVERY REASONABLE HYPOTHESIS OF INNOCENCE.
XXIX. THE COURT ERRED IN DENYING APPELLANT'S MOTION TO PRECLUDE
 EXCLUSION OF MOTHERS WITH CHILDREN UNDER FIFTEEN YEARS OF AGE
 FROM BEING EXCUSED FROM JURY SERVICE.
XXX. THIS MATTER SHOULD BE REVERSED AND A NEW TRIAL GRANTED ON
 THE GROUNDS THAT FUNDAMENTAL ERROR WAS COMMITTED AT THE TRIAL
 COURT LEVEL AS A RESULT OF THE CUMULATIVE EFFECT OF THE VARIOUS
 ERRORS OUTLINED IN APPELLANT'S BRIEF.
XXXI. SECTION 925.036 FLORIDA STATUTES, IS UNCONSTITUTIONAL IN
 THAT IT LACKS A RATIONAL BASIS FOR THE PURPOSE IN WHICH IT WAS
 ENACTED AND FURTHER VIOLATES THE DUE PROCESS AND EQUAL
 PROTECTION CLAUSE.

NOTES
[1] The thirty-one points are listed in the appendix to this opinion. We have reviewed each but the attention of counsel in this case and others appearing before this Court is invited to Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), and the authorities cited therein on the professional duty of appellate counsel to winnow out weaker arguments in order to concentrate on key issues. We have noted an increasing tendency in death penalty cases toward longer briefs with more issues which submerge and dilute arguably meritorious issues. It is not clear whether this trend results from client pressure to raise every conceivable issue or from counsels' fears that omission of any conceivable issue will constitute ineffective assistance of counsel. It is clear that neither the interests of the client nor the judicial system are served by this trend toward hybridization of pro se, Anders (Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)) and professional briefs. In this respect, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674 (1984), which recognizes the authority and duty of counsel to exercise professional judgment in representing clients. We will, of course, continue to review every issue presented and to conduct our own review in accordance with Florida Rule of Appellate Procedure 9.140(f).
[2] The voir dire of veniremen Bennett and Black was as follows:

THE COURT: What question would you have answered differently, Mr. Bennett?
MR. BENNETT: The question regarding, could I impose the death sentence if it were a situation in which the Defendant were merely an accessory to the crime.
THE COURT: This is what I'm going to say here, and then I'll see if you can answer the question after I make the statements to you.
The Defendant in this case is charged under an indictment of first-degree murder, armed robbery and kidnapping. Under Florida law, in robbery or kidnapping, if the Defendant is escaping from the immediate scene of the robbery, and the victim was killed by someone other than the Defendant, but was killed by an accomplice, and the Defendant was present and knowingly aided and abetted in the commission of the robbery, the Defendant can be equally guilty of first-degree murder.
Further, under Florida law the killing of a human being while engaged in the perpetration of or in the attempt to perpetrate the offense of robbery is murder in the first degree, even though there is no premeditated design or intent to kill.
Now, that is the Florida law. The question would be, could you follow the Florida law and the law that the Court will instruct you that is the law that would govern this case, even though you as an individual may disagree with that law? Could you follow it?
MR. BENNETT: No sir.
THE COURT: You could not follow the law?
MR. BENNETT: No sir.
....
THE COURT: All right, thank you.
May Mr. Bennett be excused for cause?
MR. STONE: Yes sir.
MRS. STEGER: Judge, I would request the Court question further with regard to that.
THE COURT: I will permit you to question, if you wish.
MRS. STEGER: Thank you, your Honor.
Mr. Bennett, you've stated that you feel that you could not vote to impose the death penalty in this particular case, or recommend the death penalty. Would your convictions with regard to that have any bearing on your ability to render a guilty or not guilty verdict as to the issue of first-degree murder?
MR. BENNETT: Knowing that a first-degree murder conviction carries with it a possible death sentence, yes, it would.
MRS. STEGER: So you would not be able to render a guilty verdict as to first-degree murder?
MR. BENNETT: Correct.
MRS. STEGER: Now, Mr. Bennett, you obviously understand, being an attorney, that being a juror is your civic duty. And also, if the Judge instructs you on the law, that you are to follow the law. You still feel you would not be able to render a verdict, a recommendation of death, if in fact it was warranted?
MR. BENNETT: My job is to uphold the law as well, but I'm sorry, my morals would not permit me to do it in this instance.
MRS. STEGER: Mr. Bennett, you would agree that there are some cases, heinous, atrocious crimes whereby the death penalty would be appropriate, is that right?
MR. BENNETT: Absolutely.
MRS. STEGER: Such as mass murder, such as an Adolf Hitler?
MR. BENNETT: Yes.
MRS. STEGER: But your feelings are, even before you hear the evidence in this case, that you could not recommend the death penalty?
MR. BENNETT: My feeling is if there is no evidence indicating that the defendant, after the crime had been perpetuated, that he consented to it, affirmed, ratified it, did something other than just attempt to remove himself from the situation, then I could not convict or at least recommend the death sentence in that instance.
MRS. STEGER: All right. And you also  but you feel that you could possibly render a guilty verdict if the evidence was there irrespective of what the next phase would be?
MR. BENNETT: No, because I know the next phase in a first-degree death sentence could be death. First-degree murder. And I couldn't come back knowing that that could be the consequence.
MRS. STEGER: Even not knowing what the evidence possibly is in this case? I mean, the Judge has read you one jury instruction that is going to be utilized at the end of the trial, but you haven't heard any evidence in this case. You don't feel that you could listen to the evidence, and based on that evidence alone make your decision?
MR. BENNETT: If the evidence came back indicating that he was merely a member of a group, and one of the members of the group other than the Defendant had committed this crime, I could not follow the instruction and come back with a conviction against him on that particular charge.
MRS. STEGER: But you would agree  what type of situation do you feel  and this is in your own words 
MR. STONE: Your Honor 
THE COURT: I feel 
MR. STONE: In the interest of saving time, I think he has repeatedly answered that he cannot possibly 
THE COURT: I agree.
MR. STONE: sit in this case.
THE COURT: We're not here  I want to thank Mr. Bennett for his candor to the Court. I want to thank you for your service as a juror, and I want to thank you for the preservation of the fundamental right of trial by jury. But under the present law of Florida, in the Court's opinion you must be excused for cause. I am now excusing you for cause, Mr. Bennett. You are excused from further jury service, and you may remain in the Courtroom or may go about your own personal affairs.
MR. BENNETT: Thank you, your Honor.
THE COURT: Thank you very much.
MRS. STEGER: Your Honor, for the record, the defense would like to register an objection to his being excused for cause.
THE COURT: The objection is so noted.
Call another juror.
... . THE COURT: Good afternoon, Mr. Black. I'll address my remarks to you, Mr. Black, and to you Mr. Adams.
Again, you have heard, I'm sure, all of the questions that have been propounded by the Court and respective attorneys this morning and this afternoon. Are there any of those questions that you did not understand?
MR. BLACK: There's one that perhaps bothers me a great deal. One is concerning this  and I don't know how to word it  but on the felony charge, or  how they tie up together.
THE COURT: Well, let me read that portion to you for just a moment. As to the first-degree murder, the robbery or kidnapping, if the Defendant is escaping from the immediate scene of the robbery, and the victim was killed by someone other than the Defendant, but was killed by an accomplice, and the Defendant was present, and the Defendant knowingly aided and abetted in the commission of the robbery, then the Defendant can be equally guilty of first-degree murder.
Further, the killing of a human being while engaged in the perpetration of or an attempt to perpetrate the offense of robbery is murder in the first degree, even though there's no premeditated design or intent to kill.
That's the law of Florida, and the question would be, could you follow that law?
MR. BLACK: I'm afraid not, sir.
THE COURT: You could not follow it?
MR. BLACK: No, morally and philosophically, I just  I can't get myself to go to the death sentence. I really can't. I just  if he committed the crime, that would be something else, but if he didn't commit the crime, no way.
THE COURT: Is there any further argument?
MR. STONE: No sir.
THE COURT: Is there any objection?
MRS. STEGER: Yes, sir, Judge.
THE COURT: Is there a motion?
MRS. STEGER: If I could just question the witness:
THE COURT: All right.
MR. STONE: The State is going to make a Motion.
MRS. STEGER: Mr. Black, if  knowing that this is a first-degree murder case with the potential verdict of or recommendation of death, if it got that far, would the fact that death is a possibility in this case affect rendering a guilty or not guilty verdict?
MR. BLACK: Yes, it would.
MRS. STEGER: In the first phase?
MR. BLACK: Yes, it would.
MRS. STEGER: Mr. Black, would you agree that there are certain circumstances under which death is the proper penalty? For example, Adolf Hitler, a mass murderer?
MR. BLACK: This is a cliche, which I can't buy. I can't buy cliches about death. Death is death, when it comes to an individual, and that poor girl is dead because somebody didn't think about that. I just can't go along morally with taking a life, no matter whose life it is.
MR. STONE: We move that this juror be excused.
THE COURT: Mr. Black, the Court wants to express its appreciation to you for being  you have an absolute right as an American citizen to your views, and I respect that.
MR. BLACK: Thank you, sir.
THE COURT: The Motion for Challenge for Cause has been granted. You are now excused, and I want to thank you for your services here this morning and this afternoon.
MR. BLACK: Thank you sir.
THE COURT: Call another juror.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).