727 So.2d 227 (1998)
Alphonso CAVE, Appellant,
v.
STATE of Florida, Appellee.
No. 90165.
Supreme Court of Florida.
December 24, 1998.
Rehearing Denied March 2, 1999.
*228 Jeffrey H. Garland of Kirschner & Garland, P.A., Fort Pierce, for Appellant.
Robert A. Butterworth, Attorney General, and David M. Schultz, Assistant Attorney General, West Palm Beach, for Appellee.
PER CURIAM.
We have on appeal the sentence of the trial court imposing the death penalty on Alphonso Cave. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The facts are set out fully in our opinion on direct appeal. See Cave v. State, 476 So.2d 180 (Fla.1985). In April 1982, Alphonso Cave and three friendsJohn Bush, J.B. ("Pig") Parker, and Terry ("Bo Gator") Johnson robbed a convenience store and kidnapped the clerk, Frances Slater. The men drove Slater to a remote location where they stabbed her and shot her once in the back of the head, execution-style. Cave was arrested shortly thereafter and charged with and convicted of first-degree murder. The court followed the jury's seven-to-five vote and sentenced him to death. We affirmed. Id. The sentence was later vacated by the federal district court based on ineffective assistance of trial counsel during the penalty phase, and this ruling was affirmed by the federal circuit court. See Cave v. Singletary, 971 F.2d 1513 (11th Cir.1992).
Cave was given a second sentencing proceeding before a jury. The jury recommended death by a ten-to-two vote and the court again imposed a sentence of death. This Court vacated the sentence due to a procedural error in the trial court's disposition of Cave's motion for disqualification of the judge. See Cave v. State, 660 So.2d 705 (Fla.1995). Cave was given a third sentencing proceeding before a jury. The jury recommended death by an eleven-to-one vote and the court again imposed a sentence of death based on four aggravating circumstances,[1] one statutory mitigating circumstance,[2] and several nonstatutory mitigating circumstances.[3] Cave now appeals this third sentence of death, raising twenty-six issues and numerous subissues.[4]
*229 Cave first contends that his role in the murder was secondary and that his death sentence violates Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). This argument has already been rejected by this Court. See Cave v. State, 476 So.2d 180 (Fla.1985). Cave also claims that his role in the murder was minor and his death sentence is thus disproportionate. The trial court, however, found that Cave was a ringleader: "The defendant's role in the entire criminal episode ... shows that he exercised a leadership role throughout." Competent substantial evidence supports the trial court's finding. We find no error.
Cave contends that there was insufficient evidence of CCP to support this aggravator. We disagree. The standard for evaluating a trial court's finding of an aggravating circumstance was set forth in Willacy v. State, 696 So.2d 693 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 419, 139 L.Ed.2d 321 (1997):
[I]t is not this Court's function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubtthat is the trial court's job. Rather, our task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.
Id. at 695. In the present case, the trial court found the following:
Clearly there was no pretense of moral or legal justification for this killing. The cold, calculated, and premeditated nature of it was shown by the general plan of the defendant and his associates to find a convenience store to rob, by defendant being the one with the gun during the robbery, by defendant being the one who chose to lead the victim out of the store at gun-point, by the defendant keeping her in the back seat of the car for the long ride out to the scene of the murder, and by the defendant taking her out of the car and turning her over to Bush and Parker who knifed and shot her. The Court finds that this aggravating circumstance has been established beyond a reasonable doubt.
The record shows that the court applied the right rule of law (i.e., it gave the standard instruction on CCP), and competent substantial evidence supports its ruling. See, e.g., Preston v. State, 607 So.2d 404 (Fla.1992). We find no error.
Cave next claims that there was insufficient evidence of HAC to support this aggravator. We disagree. The trial court found as follows:
In the present case this Defendant personally removed the victim from the convenience store at gun point, placed her in the back seat of the car in which he and a co-defendant were seated, heard her pleas for her life during a fifteen to eighteen minute ride to an isolated area, removed her from the car and turned her over to Bush and Parker who stabbed and then shot her. At some point her panties were wet with urine. The terror she experienced must have been horrible and meets the definition of especially heinous, atrocious and cruel. The situation here is in contrast to a killing that is sudden and unexpected. The Court finds that this aggravating circumstance has been established beyond a reasonable doubt.
Our review of the record shows that the court applied the right rule of law (i.e., it gave the standard instruction on HAC), and competent substantial evidence supports its ruling. See, e.g., id. We find no error.
Cave contends that there was insufficient evidence of witness elimination to support this aggravator. We disagree. The trial court found as follows:

*230 The Court finds beyond a reasonable doubt this aggravating factor has been proven. The purpose of the abduction and killing was clearly to eliminate the only witness to the robbery. The Court is not bound to believe defendant's statement that he did not intend or expect the victim to be murdered. The evidence shows that defendant had a leadership participation in the entire criminal episode.
The record shows that the trial court applied the right rule of law (i.e., it gave a proper instruction on this aggravator), and competent substantial evidence supports its ruling. See, e.g., id. We find no error.
Cave next claims that the trial court improperly based its findings of the CCP and witness elimination aggravators on the same facts. The record, however, shows that although the two aggravators share common facts, the witness elimination aggravator is supported by additional independent facts. There was little reason for the men to kidnap Slater except to kill her at their leisure in isolated surroundings where they would not be surprised or observed; and there was no other reason to kill hershe was not shot accidently or in an escape attempt. See, e.g., Stein v. State, 632 So.2d 1361 (Fla.1994). We find no error.
Cave claims that the trial court erred in attributing little weight to the mitigating circumstance of "no significant history of prior criminal activity." We disagree. This Court in Blanco v. State, 706 So.2d 7 (Fla. 1997), summarized the Campbell standards of review for mitigating circumstances:
The Court in Campbell v. State, 571 So.2d 415 (Fla.1990), established relevant standards of review for mitigating circumstances: 1) Whether a particular circumstance is truly mitigating in nature is a question of law and subject to de novo review by this Court; 2) whether a mitigating circumstance has been established by the evidence in a given case is a question of fact and subject to the competent substantial evidence standard; and finally, 3) the weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard.
Id. at 10 (footnotes omitted).
In the present case, the trial court found as follows concerning the mitigating circumstance of lack of prior criminal activity:
The Court finds that this mitigating factor has been proven. It is entitled to little weight, however, in view of the enormity of the crimes committed in this episode. This Court was once asked by a bank robber for leniency as it was his first bank robbery. The implication was that everyone is entitled to one bank robbery. In the instant case it cannot be said that defendant is entitled to much consideration because it is his first murder or that robbery, kidnapping and murder were the first crimes he chose to commit.
We conclude that the trial court's assignment of weight to this aggravator comports with Campbell (i.e., "the weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard," Blanco, 706 So.2d at 10). We cannot say on this record that no reasonable person would assign little weight to this aggravator.[5] We find no error.
Cave contends that the trial court erred in failing to find as a mitigating circumstance that he was a minor participant in the murder. We disagree. The trial court found as follows:
The defendant's role in this murder, as noted above, included leadership activities. He participated in casing out the convenience store, he carried the gun throughout the robbery and the kidnapping, and only relinquished it to Parker for the execution. Defendant personally directed the victim out of the store and into the car. He held her captive in the back seat during her pleas for her life. He got her out of the car and turned her over to Bush and Parker who promptly stabbed and shot her.
We conclude that the trial court's finding that this proposed mitigating circumstance *231 was not established comports with Campbell (i.e., "whether a mitigating circumstance has been established by the evidence in a given case is a question of fact and subject to the competent substantial evidence standard," Blanco, 706 So.2d at 10). Our review of the record shows that competent substantial evidence supports the court's finding. We find no error.
Cave claims that the trial court erred in failing to find age as a mitigator. We disagree. The trial court found:
It appears that the defendant was twenty-three years of age at the time of the murder. There is no magic cutoff number for this mitigator so in theory it could be applicable to every defendant. However, the purpose of this circumstance would appear to be to give some mitigation where youthful inexperience and immature decision making entered into the crime.
Nothing in the evidence establishes such factors. Defendant had left home and was living in an apartment with his girl friend. He showed criminal sophistication in casing out the convenience store and in eliminating the only witness. There was no childish action involved. Now at age 38... he characterizes his action at the time as a "stupid-ass thing to do." While that may be true, people of all ages and maturities do "stupid-ass things" from time to time. The court finds that this mitigator has not been proven.
Our review of the record shows that the court's finding that this mitigator was not established is supported by competent substantial evidence. See Blanco, 706 So.2d at 10. We find no error.
The trial court's ruling on each of the points raised in Issue 9 comports with the above Campbell standards: (A) The trial court did not abuse its discretion in giving little weight to Cave's proposed mitigator of remorse; (B) the sentencing order shows that the trial court weighed the fact that Cave was not the shooter; (C) competent substantial evidence supports the court's rejection of Cave's proposed mitigator that he did not know the killing was going to occur; (D) competent substantial evidence supports the court's rejection of Cave's proposed mitigator that he was less culpable than his cohorts; (E) the court did not abuse its discretion in giving little weight to the fact that Cave saved a relative from drowning when Cave was a child; (F) the court did not abuse its discretion in giving little weight to Cave's claim that he had consumed alcohol and drugs on the night of the crime; and (G) the trial court did not abuse its discretion in giving little weight to the remaining nonstatutory mitigators. We find no error.
Cave next contends that facts not specifically set forth in the sentencing order cannot be used to support the trial court's finding of aggravating circumstances. We disagree. It is the task of this Court to review the entire recordnot just the sentencing orderto determine whether an aggravating circumstance is adequately supported by the evidence. See Willacy v. State, 696 So.2d 693, 695 (Fla.1997) ("[O]ur task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding."); see generally Peterka v. State, 640 So.2d 59, 70 (Fla.1994) (rejecting defendant's claim that sentencing order was deficient because it "failed to provide sufficient facts to support the finding of the aggravating circumstances."). We find no error.
To support its finding of HAC, the trial court noted, "At some point [the victim's] panties were wet with urine. The terror she experienced must have been horrible." Cave contends that the evidence adduced at trial failed to establish beyond a reasonable doubt that the victim's urinating was a pre-mortem phenomenon related to her fear. Our review of the record, however, shows that competent substantial evidence supports the trial court's finding. The medical examiner testified: "To completely [empty] the bladder ... it's highly improbable for it to have occurred any time other than while she was alive." We find no error. We find Cave's remaining claims to be without merit.[6]
*232 In conclusion, we find that Cave's sentence of death is adequately supported by the evidence and is proportionate to other capital cases. We affirm the death sentence.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, and WELLS, JJ., concur.
PARIENTE, J., concurs in result only with an opinion.
KOGAN, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., dissents with an opinion.
PARIENTE, J., concurring in result only.
I concur in the majority's affirmance of the death sentence. However, I disagree with the majority's opinion in two respects. First, I disagree that our review of whether the trial court applied the "right rule of law" in finding that an aggravating circumstance has been established can be determined solely based on whether the correct jury instruction was given. See Majority opinion at 3. Because the trial court makes independent findings of aggravating and mitigating circumstances, the fact that the trial court properly instructed the jury on the aggravating circumstances does not end our inquiry regarding whether the trial court correctly applied the law as set forth in this Court's opinions.
Second, I agree with the well-reasoned opinions of Justices Kogan and Anstead criticizing this Court's approval of the trial court's evaluation of the statutory mitigating factor of "no significant history of prior criminal activity." The trial judge's reason for assigning little weight to this statutory mitigator is not based on any evidence. Instead, the decision to give little weight to this statutory aggravator was based purely on the judge's own personal opinion. Approving the judge's decision under these circumstances essentially nullifies this statutory mitigator.
Nevertheless, I concur in the result because even if we were to disregard CCP and give appropriate consideration to the statutory mitigator of no significant history of criminal activity, I would still affirm the imposition of death. See, e.g., Stein v. State, 632 So.2d 1361, 1367 (Fla.1994).
KOGAN, J., concurring in part and dissenting in part.
I concur with the majority's decision in all respects except its treatment of the issue involving statutory mitigating factor of "no significant history of prior criminal activity." See § 921.141(6)(a), Florida Statutes (1997). As to this issue, I disagree with the majority and join Justice Anstead in his well-reasoned dissent. While the trial court in this case did find that the "no significant history of prior criminal activity" mitigating factor was proven, the court's broad reasoning for affording little weight to that statutory mitigator essentially *233 overrides the Legislature's spoken word. Therefore, I respectfully dissent.
ANSTEAD, J., dissenting.
I cannot agree that the appellant's sentence of death is proportional, especially when his participation in this senseless murder is compared to that of his three codefendants, two of whom were the actual killers and have had death sentences approved by this Court, and one of whom has already been executed. As noted in the majority opinion, the original jury's sentencing recommendation in this case was seven-five, one vote from a life recommendation.
This Court has recently reaffirmed the constitutional basis of its proportionality review in death penalty cases, while emphasizing its singular role in ensuring the integrity of Florida's capital sentencing process:[7]
In performing a proportionality review, a reviewing court must never lose sight of the fact that the death penalty has long been reserved for only the most aggravated and least mitigated of first-degree murders. State v. Dixon, 283 So.2d 1, 7 (Fla. 1973). See also Jones v. State, 705 So.2d 1364, 1366 (Fla.1998) (reasoning that "[t]he people of Florida have designated the death penalty as an appropriate sanction for certain crimes, and in order to ensure its continued viability under our state and federal constitutions `the Legislature has chosen to reserve its application to only the most aggravated and unmitigated of [the] most serious crimes.'") (footnote omitted).
Proportionality review "requires a discrete analysis of the facts," Terry v. State, 668 So.2d 954, 965 (Fla.1996), entailing a qualitative review by this Court of the underlying basis for each aggravator and mitigator rather than a quantitative analysis. We underscored this imperative in Tillman v. State, 591 So.2d 167 (Fla.1991):
We have described the "proportionality review" conducted by this Court as follows:
Because death is a unique punishment, it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances.

Porter v. State, 564 So.2d 1060, 1064 (Fla.1990). The requirement that death be administered proportionately has a variety of sources in Florida law, including the Florida Constitution's express prohibition against unusual punishments. Art. I, § 17, Fla. Const. It clearly is "unusual" to impose death based on facts similar to those in cases in which death previously was deemed improper. Id. Moreover, proportionality review in death cases rests at least in part on the recognition that death is a uniquely irrevocable penalty, requiring a more intensive level of judicial scrutiny or process than would lesser penalties. Art. I, § 9, Fla. Const.; Porter.

... Thus, proportionality review is a unique and highly serious function of this Court, the purpose of which is to foster uniformity in death-penalty law.

Id. at 169 (alterations in original) (citations and footnote omitted). As we recently reaffirmed, proportionality review involves consideration of "the totality of the circumstances in a case" in comparison with other death penalty cases. Sliney v. State, 699 So.2d 662, 672 (Fla.1997) (citing Terry, 668 So.2d at 965).
Urbin v. State, 714 So.2d 411, 416-17 (Fla. 1998). The statement from Tillman quoted in Urbin should be emphasized: "[P]roportionality review is a unique and highly serious function of this Court." Cave's death sentence cannot withstand this stringent standard of review.
*234 Initially, the majority completely overlooks the fact that the trial court's cavalier dismissal of the statutory mitigator of "no prior criminal activity" was patently erroneous, especially because it is undisputed that Cave was not an actual killer, and this is an important statutory mitigator that should substantially impact the sentencing decision. In rejecting this mitigator as an unreasonable boon to a "first-time" murderer, the trial court has effectively nullified the legislature's action in adopting this mitigator, and has demonstrated a fundamental misunderstanding of the legislative scheme and a trial court's serious responsibility under that scheme.
The obvious import of the mitigator is that a defendant who has led a law-abiding life prior to the capital crime should receive more favorable consideration in sentencing than one who did not. Society as a whole, and certainly someone charged with making a sentencing decision, instinctively and logically wants to know about the record of the offender up to the time of the current offense. This prior record provides a valuable insight into the character of an offender over a long period of time preceding the event in question. For example, an offender's prior record plays a key role under our sentencing guidelines. Hence, it is not surprising that the legislature has mandated that the lack of a prior record should be a significant factor in capital sentencing.[8] The trial court's error is patent and devastating in the sentencing analysis here. We should not approve a sentence based upon such flawed reasoning.
It is also questionable whether the trial court's findings as to several statutory aggravators can withstand close scrutiny. Of course, the State had the responsibility to prove that Cave himself was guilty of these aggravators beyond a reasonable doubt. Omelus v. State, 584 So.2d 563 (Fla.1991) (HAC aggravator cannot be applied vicariously). Florida's capital sentencing scheme contemplates individualized sentencing whereby an individual defendant may be held accountable for his actions in aggravation or mitigation. Williams v. State, 622 So.2d 456 (Fla.1993).
The findings as to the aggravator of cold, calculated and premeditated provide an example. Indeed, it is significant that this aggravator was not found by the trial court in appellant's first sentencing. Cave v. State, 476 So.2d 180 (Fla.1985). Further, there has been no showing that substantial additional evidence was presented at the most recent sentencing hearing to prove that Cave coldly, and with considerable advance calculation, carefully planned to kill the victim. As this Court explained in Gordon v. State, 704 So.2d 107 (Fla.1997), the following elements must be established beyond a reasonable doubt to find CCP:
[T]he jury must first determine that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); and that the defendant exhibited heightened premeditation (premeditated); and that the defendant had no pretense of moral or legal justification.
Id. at 114 (quoting Jackson v. State, 648 So.2d 85, 89 (Fla.1994)). We made clear that "unless all the elements are established, we will not uphold the finding of a CCP aggravator." Gordon, 704 So.2d at 114. We also recognized that although CCP can be established by circumstantial evidence, it "must be inconsistent with any reasonable hypothesis which might negate the aggravating factor." Id. (quoting Geralds v. State, 601 So.2d 1157, 1163 (Fla.1992)). Of course, we have repeatedly explained that planning to commit an underlying robbery is not sufficient. See Jennings v. State, 718 So.2d 144, 152 (Fla. 1998) ("Evidence of plan to commit a crime other than murder (such as, in this case, robbery) is in and of itself insufficient to support CCP."); Castro v. State, 644 So.2d *235 987, 990 (Fla.1994). Nor is it sufficient that there is a suspicion that a plan to kill existed. Besaraba v. State, 656 So.2d 441 (Fla.1995).
Rather, to properly find this aggravator the evidence must show beyond a reasonable doubt that Cave, a novice criminal, coolly and calmly determined that he and his compatriots would kill the victim; that he carefully planned and calculated the manner in which the killing would be accomplished; and that his premeditation to kill was of an appreciable degree beyond that required for ordinary first-degree murder so as to constitute heightened premeditation. On the contrary, however, the record does not contain evidence that Cave planned this murder at all. Rather, the facts appear to show that Cave was a minion who agreed to participate in the robbery, following orders from at least one of the two prior convicted felons, Bush and Parker. That he immediately turned the gun over to Bush and Parker in the front seat upon returning to the car appears to confirm his subordinate status. Cave, of course, maintains that the victim was abducted to ensure their escape, after which time she would be released unharmed in a remote location. While the record does not otherwise establish Cave's knowledge of a plan to kill, this evidence provides at least a "cohesive reasonable hypothesis" that he did not plan or intend for the victim to be killed, thus precluding a finding of CCP beyond a reasonable doubt. Geralds v. State, 601 So.2d 1157, 1163 (Fla.1992).[9]
Similarly, as to the trial court's finding of the HAC aggravator, while there is evidence to sustain a finding of this aggravator against Bush and Parker, who actually stabbed and shot the victim, there is no evidence that Cave intended to or did inflict a torturous death upon the victim. See Robertson v. State, 611 So.2d 1228 (Fla.1993); see also Hartley v. State, 686 So.2d 1316, 1323-24 (Fla.1996) ("Speculation that the victim may have realized that the defendants intended more than a robbery when forcing the victim to drive to the field is insufficient to support this aggravating factor."). Hence, the State has failed in its obligation to prove beyond a reasonable doubt this aggravator applies to Cave. Williams; Omelus; Archer v. State, 613 So.2d 446 (Fla.1993).
Further, it appears to defy common sense that Cave, a person with no prior criminal history, was somehow the "ringleader" of a group that included Bush, a felon previously convicted of robbery and rape, and another felon, Parker, previously convicted of accessory to armed robbery. It is also difficult to square with this Court's prior, explicit determination that "Bush played a predominant role in this crime." Bush v. State, 682 So.2d 85, 87 (Fla.1996). Bush's car was used throughout the criminal episode; the gun used to rob and eventually kill the victim belonged to Bush; and Bush allowed Cave alone to expose himself to possible identification and apprehension during the robbery, while he and the others waited safely in the car. Thus, Bush apparently determined where they would go and what they would do with the innocent victim, presumably in league with Parker, who sat next to Bush in the front passenger's seat and later joined Bush in executing the victim.
Moreover, Cave has proffered significant nonstatutory mitigation, particularly that he was not the triggerman; was under the influence of alcohol or marijuana when committing the offenses; had led a pretty exemplary life; saved a person's life as a youth; and showed remorse. Therefore, on the whole, the record indicates that Cave's role in the crime is not among the "most aggravated and least mitigated for which the death penalty is reserved." State v. Dixon, 283 So.2d 1, 7 (Fla.1973). The undisputed fact that he was not the actual killer combined with Cave's mitigation indicates that the death penalty and "its total rejection of the possibility of rehabilitation," id. at 7, is inappropriate in his case. Indeed, Cave's role in the murder, as compared to the robbery, is much closer to the role played by the other defendant in the back seat.
As noted above, this Court has approved death sentences for the two principal actors *236 in this murder case, and one has already been executed. The State itself chose not to seek the death penalty for another of the four participants, and the record does not support the imposition of the death penalty for Cave, a young defendant without a prior criminal record who was a major participant in the underlying robbery but not in the subsequent murder.
NOTES
[1] The court found that the following aggravating circumstances were proven: the murder was committed during the flight following a robbery and during a kidnapping; the murder was especially heinous, atrocious, or cruel (HAC); the murder was committed in a cold, calculated, and premeditated manner (CCP); the murder was committed to avoid arrest.
[2] The court found that Cave had no significant history of prior criminal activity.
[3] The court found that several nonstatutory mitigating circumstances were established, including: remorse; Cave was not the triggerman; Cave saved someone's life when Cave was a youth; Cave was under the influence of alcohol or marijuana at the time of the crime; Cave was a good son, neighbor, worker, and father; Cave's only son died as a result of a criminal act; Cave has improved himself in prison; and Cave confessed his role in the crime. The court gave "little weight" to most of these factors.
[4] Cave claims error on the following points: (1) proportionality; (2) evidence of CCP; (3) evidence of HAC; (4) evidence of witness elimination; (5) doubling of CCP and witness elimination; (6) weight given to "no prior criminal activity"; (7) Cave's role in the crime; (8) age as a mitigator; (9) evidence of various nonstatutory mitigators; (10) whether facts not listed in the sentencing order can be used to support aggravators; (11) the cause of victim's urination; (12) HAC instruction; (13) HAC aggravator; (14) witness elimination instruction; (15) witness elimination aggravator; (16) felony murder instruction; (17) felony murder aggravator; (18) CCP aggravator; (19) whether CCP should have been submitted to jury; (20) allocation of burdens of proof; (21) guidance for jury; (22) victim impact statute; (23) adequacy of jury vote; (24) adequacy of appellate review; (25) denial of a defense; (26) evidence of victim impact.
[5] See Huff v. State, 569 So.2d 1247, 1249 (Fla. 1990) ("[D]iscretion is abused only where no reasonable [person] would take the view adopted by the trial court.").
[6] Issue 12 has already been decided adversely to the defendant. See, e.g., Chandler v. State, 702 So.2d 186 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). Issue 13 has already been decided adversely to the defendant. See, e.g., id. As to Issue 14, the witness elimination instruction that was given was a correct statement of the law. See generally Wike v. State, 698 So.2d 817 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 714, 139 L.Ed.2d 655 (1998). Issue 15 has already been decided adversely to the defendant. See, e.g., Whitton v. State, 649 So.2d 861 (Fla.1994). Issue 16 has already been decided adversely to the defendant. See generally Blanco v. State, 706 So.2d 7 (Fla. 1997). Issue 17 has already been decided adversely to the defendant. See, e.g., id. Issue 18 has already been decided adversely to the defendant. See, e.g., Phillips v. State, 705 So.2d 1320 (Fla.1997). Issue 19 has already been decided adversely to the defendant. See Preston v. State, 607 So.2d 404 (Fla.1992). Issue 20 has already been decided adversely to the defendant. See, e.g., Brown v. State, 565 So.2d 304 (Fla.1990). Issue 21 has already been decided adversely to the defendant. See, e.g., Robinson v. State, 574 So.2d 108 (Fla.1991). Issue 22 has already been decided adversely to the defendant. See, e.g., Windom v. State, 656 So.2d 432 (Fla.1995). Issue 23 has already been decided adversely to the defendant. See, e.g., James v. State, 453 So.2d 786 (Fla.1984). Issue 24 has already been decided adversely to the defendant. See, e.g., Hunter v. State, 660 So.2d 244 (Fla.1995). Issue 25 has already been decided adversely to the defendant. See Bush v. State, 682 So.2d 85, 87 (Fla.1996) ("[W]e know of no legal basis for staying Bush's third death warrant pending a subsequent penalty hearing for a codefendant."). Issue 26 has already been decided adversely to the defendant. See, e.g., Bonifay v. State, 680 So.2d 413, 419-20 (Fla.1996) ("Clearly, the boundaries of relevance under the statute include evidence concerning the impact to family members.").
[7] Further, there can be no serious dispute that this Court's constitutional duty to "foster uniformity in death-penalty law" cannot be fulfilled by or delegated to the trial court. That, however, appears to be the import of the summary conclusion in the majority opinion that appellant's death sentence is proportionate because "competent substantial evidence supports the trial court's finding" that appellant was a principal actor in the episode. Majority op. at 2.
[8] The same logic that underlay the legislature's establishment of this statutory mitigator surely informed its decision to establish a prior violent felony aggravator, since such a prior conviction obviously indicates the persistent and escalating nature of the defendant's criminal activity. Those complementary rationales of mitigation and aggravation make sense within a fair and balanced capital statutory scheme.
[9] This same analysis undermines the trial court's finding of the witness elimination aggravator. See Scull v. State, 533 So.2d 1137, 1142 (Fla. 1988) ("While several theories have been advanced as to why these murders took place, there is little evidence to support any of them.").