899 So.2d 1042 (2005)
Alphonso CAVE, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-95.
Supreme Court of Florida.
January 27, 2005.
Rehearing Denied April 7, 2005.
*1044 Mary Catherine Bonner, Fort Lauderdale, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Debra Rescigno, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Alphonso Cave, an inmate under sentence of death, appeals an order of the *1045 circuit court denying his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction, see art. V, § 3(b)(1), Fla. Const., and, for the reasons that follow, we affirm.

I. BACKGROUND
In 1982, Alphonso Cave was convicted of armed robbery, kidnapping, and first-degree murder. In our opinion on direct appeal, we summarized the underlying facts as follows:
Cave and three accomplices left Ft. Pierce, Florida, on the evening of April 26, 1982, and drove to Stuart, Florida. They arrived in Stuart at approximately 11 p.m. that evening. The driver, and owner of the car in which all four rode, was John Earl Bush. The other two accomplices were J.B. ("Pig") Parker and Terry Wayne Johnson ("Bo Gator"). At approximately 3 a.m. on the following morning, the four men drove to a convenience store in Stuart. Cave and two of the men [Bush and Parker] entered the store where Cave held a hand gun on the youthful female clerk [Frances Slater] and demanded the store's cash. The clerk surrendered the cash, whereupon she was taken from the store and placed in the back seat of the car. The men drove her to a rural area approximately thirteen miles away where she was removed from the car by the four men. After leaving the car, one of the men [probably Bush] stabbed the victim and, when she fell, another [probably Parker] fired a single lethal shot into the back of her head.
Cave v. State, 476 So.2d 180, 183 (Fla.1985) (Cave I). In particular, we wrote that
Cave was the gunman who admits to holding the gun on the clerk during the robbery and forcing her into the car; he was present in the car during the thirteen-mile ride and heard her plead for her life; and he was present when she was forcibly removed from the car in a rural area, stabbed, and shot in the back of the head.
Id. at 187.
At the conclusion of the penalty phase, the jury (by a vote of seven to five) recommended a sentence of death on the first-degree-murder conviction. Following the jury's recommendation, the trial court sentenced Cave to death, finding three aggravating circumstances[1] and no mitigating circumstances. On direct appeal, we affirmed Cave's convictions and his death sentence. Cave I, 476 So.2d at 183.
In 1988, Cave sought postconviction relief under rule 3.850. The circuit court denied Cave's motion, and we affirmed. Cave v. State, 529 So.2d 293 (Fla.1988) (Cave II). Cave then petitioned the federal district court for a writ of habeas corpus. The district court granted Cave partial relief, ordering a new sentencing proceeding but rejecting Cave's plea for a new guilt-phase trial. The court of appeals affirmed, Cave v. Singletary, 971 F.2d 1513 (11th Cir.1992) (Cave III),[2] and *1046 the case was remanded to the state circuit court for a new penalty-phase proceeding.
At the conclusion of this new penalty phase (the 1993 resentencing), the jury (by a vote of ten to two) recommended a sentence of death. Following the jury's recommendation, the trial court sentenced Cave to death, finding five aggravating circumstances,[3] no statutory mitigating circumstances, and four nonstatutory mitigating circumstances.[4]Cave v. State, 660 So.2d 705, 706 (Fla.1995) (Cave IV). On direct appeal, however, we vacated the sentence because the trial judge had erroneously conducted a full evidentiary hearing on the factual allegations contained in Cave's motion to disqualify the judge. Id. at 707-08.
The case was remanded for yet another penalty-phase proceeding. At the conclusion of this latest penalty phase (the 1996 resentencing), the jury (by a vote of eleven to one) recommended a sentence of death. Following the jury's recommendation, the trial court again sentenced Cave to death, finding four aggravating circumstances,[5] one statutory mitigating circumstance,[6] and several nonstatutory mitigating circumstances.[7]Cave v. State, 727 So.2d 227, 228 (Fla.1998) (Cave V). On direct appeal, we affirmed the death sentence. Id. Among other things, we rejected Cave's claim that his death sentence was unconstitutional under Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and we rejected the claim that his death sentence was disproportionate. We noted that the trial court found that even though Cave was not the shooter, he was a ringleader and "exercised a leadership role throughout" the criminal episode. 727 So.2d at 229.[8]
*1047 Cave then filed the rule 3.850 motion that is at issue here. Before the circuit court, Cave raised several claims.[9] The *1048 circuit court conducted a two-day evidentiary hearing on all of Cave's claims except the Apprendi claim.[10] After the hearing and after both Cave and the State presented written closing arguments, the circuit court denied relief.[11]
Cave now appeals the circuit court's denial of relief, raising four claims. First, he argues that he is entitled to a new trial (on both guilt and sentencing) or, at a minimum, to a new sentencing proceeding in light of codefendant Bush's "deathbed statement." As noted above, Bush's former attorney, Kissinger, testified at the evidentiary hearing that Bush, just before he was executed, told Kissinger that Cave had attempted to dissuade the others from killing the victim and, when he was unsuccessful, he withdrew to the car and took no part in the killing. Cave argues that Bush's statement constitutes newly discovered evidence or, alternatively, that counsel's failure to discover and introduce this evidence at the penalty phase, either by preserving Bush's testimony through deposition or by calling Kissinger to testify about what Bush said before being executed, amounted to ineffective assistance of counsel.
Second, Cave argues that Florida's capital-sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Third, he argues that counsel was ineffective for failing to present expert mental-health testimony and evidence of Cave's extensive history of heroin abuse. Finally, Cave argues that counsel's overall performance was ineffective, specifically counsel's failure to present evidence of Bush's statement, *1049 his failure to object to the State's misleading voir-dire questions, his decision to introduce the fact of Cave's prior arrest and failure to object when the State later elicited the nature of the charge, his failure to prepare Cave and Cave's mother for their testimony, and his overall strategy of not presenting expert mental-health testimony, which, Cave argues, was based on counsel's misunderstanding of the circumstantial-evidence rule.

II. DISCUSSION

A. Codefendant Bush's Statement

1. Introduction
Cave makes two separate arguments here. First, he argues that counsel was ineffective for failing in some way to introduce Bush's statement at the 1996 resentencing. Cave argues that counsel should have preserved Bush's testimony by deposing him prior to his execution or he should have called Bush's lawyer, Kissinger, to testify about the statement Bush made to him. Counsel's failure to take either course of action, Cave argues, resulted in ineffective assistance of counsel because the jury did not get to hear from one of Cave's codefendants that not only did Cave not shoot or stab the victim, but also that he affirmatively tried to prevent the killing, and when this attempt was unsuccessful, he withdrew to the car and took no part in the killing. Cave also argues, alternatively, that Bush's statement constitutes newly discovered evidence entitling him either to a new trial or, at a minimum, a new penalty phase. We reject both of these arguments for the reasons we will explain below.

2. Relevant Statements
At the evidentiary hearing, Kissinger testified about a statement Bush made to him after all of Bush's appeals had been exhausted and Bush knew he would be executed the next morning. Kissinger testified as follows:
Mr. Bush was  was distraught. Distraught at this point not because of his discussion [sic] but because of  he felt responsible in a way for Mr. Cave's predicament.
What he stated to me was  was to a certain extent a repetition of what he had testified to during his own sentencing which was that the  that as between the three individuals, Mr. Bush, Mr. Cave, and Mr. Parker, that they were at the scene of the  the scene of the victim's murder.
That according to Mr. Bush's recollection or Mr. Bush's statements, they had gone out there without any specific plan as to what they were going to do. They had committed this robbery, they had kidnapped this young woman and they had taken her to this area. He stated that at that point Mr. Parker directed Mr. Cave to provide him with a firearm that Mr. Cave had in his possession which Mr. Cave  Mr. Cave did.
....
Mr. Parker then made a statement to the effect, and again, this is a statement which is consistent with Mr. Bush's testimony at the sentencing. Mr. Parker made a statement at this point that he was going to  he was going to do what he had to do or something along those lines.
At this point, Mr. Cave  Mr. Bush told me that Mr. Cave became upset and that he told Mr. Parker basically that it was  that he didn't have  he didn't have to do this. Mr. Parker to my understanding repeated some statement to the effect that it became obvious that he was going through with it. Mr. Cave not being successful in his attempts to affirm [sic] what appeared inevitable, left Mr. Parker and Mr. Bush. And if I *1050 recall Mr. Bush's statement accurately, went back to the vehicle and got inside the vehicle and left them behind. Mr. Bush then admitted that at that point Mr. Parker told him to stab the victim, that he went over to her and that he did stab her, and that Mr. Parker then took the firearm and shot the victim causing her death.
Transcript of Proceedings (hereinafter Tr. Pro.) at 392-94.
On cross-examination of Kissinger, the State introduced a statement Bush made at a 1985 clemency hearing before the Florida Parole and Probation Commission. In this statement, when he was asked about the kidnapping after the robbery, Bush portrayed Cave as the leader. The statement is consistent with the conclusion that Cave was neither the shooter nor the stabber, but it does not support the assertion in Bush's preexecution statement, and now advanced by Cave, that Cave actually tried to prevent the killing:
Q: Okay. At that time why didn't you just either remain in the store or flee the scene?
A: Because the gun was drawn on me just like it was drawn on her.
Q: Okay. Who was holding that gun on you?
A: Alphonso Cave at the time.
Q: Okay. Were you fearful at that time that your life was also in danger?
A: Yes, sir.
Q: Okay. Who put her back  who put her, Ms. Slater, in the vehicle?
A: Alphonso Cave.
Q: Okay. And did someone tell you to get behind the wheel?
A: Yes, sir.
Q: Who was that?
A: Cave.
Q: Okay. What did you say to him?
A: I told him that I didn't want no part of it. They told me I was already part of it because it was my gun he had, and it was my car she was in. So he told me to get in and drive, so I got in and drove.
....
Q: Okay. Was there a discussion in the motor vehicle? Did anybody say anything about the girl?
A: Not at the time until they had me stop. They had me stop. They told me to get out and Cave gave me a knife and told me to kill her. I told him I wasn't no killer. So at that time that's when J.B. Parker got the gun and told me and said I either kill her or he kill me, so I stuck her with the knife, and she fell, and so I just stood there, and then she got shot in the back of the head.
....
Q: Okay. Who fired the weapon?
A: Parker.
Transcript of 1996 Resentencing Trial (hereinafter Tr. Resent. Trial) at 1950-52.
Bush's deathbed statement should also be compared with Cave's own testimony at the 1996 resentencing proceeding in which he makes no mention of trying to prevent the killing. In particular, Cave testified about his role in the killing as follows:
Q: After the four of you get into the car [after the robbery], can you tell the jury what happened next?
A: Well, we rode  we drove  we drove going towards Palm Beach and then we just made some turns, just made a lot of turns, and then we got to that back road back there, that road where the incident [the killing] happened at.
We was  at that time we was talking about letting her go, I'm thinking we  I was fixin' to let her go, but when we got to the back road and I get out, she get *1051 out and just me and her walked down the road, passed the back of the car, just walked down.
Q: And what happened then?
A: I turned around, she just kept walking. I turned around and I go back to the car. As I come[ ] back to the car, Bush passes me as I'm to the back of the car, I'm to the door of the car now, he passed me and him and Parker go, Parker come right behind him and I'm wondering where they going. So `cause I'm ready to go. But 
Q: And then what happened?
A: Bush stabbed her.
Q: Could you see that?
A: Yes.
Q: What happened after that?
A: Then she fell and Parker leaned over and shot her in the head.
Q: Where were you when you saw  when you saw the victim knifed and then shot?
A: At the door at the car.
Q: What was you reaction to that?
A: Sick.
Tr. Resent. Trial at 1326-27, Cave v. State, 727 So.2d 227 (Fla.1998)(No. 90165) (Cave V).
On cross-examination, the State asked Cave about what happened when he passed Bush as he was heading back to the car and Bush was heading toward the victim. Again, Cave made no mention of trying to stop Bush and Parker from killing the victim:
Q: What did he say to you when he walked by?
A: He didn't say anything.
Q: Was he walking or running?
A: Walking fast. He wasn't running, he didn't say anything to me.
....
Q: When Parker walked by you did he have the gun in his hand?
A: Yes.
....
Q: Well, when they walked by you did you say, hey, where you going?
A: Yeah, I'm ready to go.
Q: You were ready to go but did you say to them, where are you going?
A: No, but it crossed my mind. I should have. I didn't but it crossed my mind.
Tr. Resent. Trial at 1432-1435.
The State also presented the testimony of Detective Lloyd Jones, who told the jury about the confession he took from Cave; and the State also played for the jury Cave's taped confession. In his confession, as in his testimony, Cave did not mention trying to stop the others from killing the victim.

3. Analysis

Ineffective Assistance of Counsel
To prevail on his ineffective-assistance claim, Cave must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that counsel's failure to present evidence of Bush's statement, either through a deposition of Bush or through the testimony of Kissinger, amounted to deficient performance; i.e., he must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052. Cave then must demonstrate that counsel's deficient performance prejudiced his defense. To do this, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. In Strickland, the Court explained that "[a] reasonable probability is a probability sufficient to undermine confidence in *1052 the outcome." Id. Because both prongs of the Strickland test present mixed questions of law and fact, we employ a mixed standard of review, deferring to the circuit court's factual findings (if they are supported by competent, substantial evidence) but reviewing the circuit court's legal conclusions de novo. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999).
Assuming, for purposes of this opinion, that counsel's failure to present evidence of Bush's deathbed statement amounted to deficient performance, we nevertheless hold that Cave is not entitled to relief. Cave has not established a claim of ineffective assistance of counsel because he has not shown that he was prejudiced by the (assumed) deficiency under the Strickland standard. Whatever was to be gained from introducing Bush's deathbed statement would have been undercut by the damaging introduction of Bush's prior inconsistent statement, where he made Cave out to be a ringleader, and by the fact that Cave himself never asserted that he actually tried to stop the killing, either in his confession to Detective Lloyd, which was played for the jury, or in his 1996 penalty-phase testimony. These facts would have undermined the credibility of Bush's deathbed statement and could actually have resulted in more harm than benefit.

Newly Discovered Evidence
Cave also claims that Bush's deathbed statement should be considered newly discovered evidence, entitling him to a new trial or, minimally, a new penalty-phase proceeding. This claim, however, is not properly before us because it was not timely presented to the circuit court. Cave did not raise the newly discovered evidence claim in his motion for postconviction relief, nor did he seek to amend his motion following the evidentiary hearing as the rules permit; instead, he raised the claim for the first time in his motion for rehearing following the circuit court's order denying relief; this was not an argument properly made in a motion for rehearing. Because the issue was not properly and timely presented to the lower court, the claim is not cognizable on appeal, see Gordon v. State, 863 So.2d 1215, 1219 (Fla.2003); Way v. State, 760 So.2d 903, 915 (Fla.2000), and we will not address its merits.

B. Florida's Capital-Sentencing Scheme
Cave argues that Florida's capital-sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We previously have addressed similar claims and denied relief. See, e.g., Jones v. State, 845 So.2d 55, 74 (Fla.2003); Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). For the same reasons, we deny relief here. Furthermore, one of the aggravating circumstances found by the trial court was that the murder was committed in the course of two felonies. Cave was found, by a unanimous jury, guilty beyond a reasonable doubt of both felonies. Cf. Belcher v. State, 851 So.2d 678, 685 (Fla.), cert. denied, 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003); Kormondy v. State, 845 So.2d 41, 54 n. 3 (Fla.), cert. denied, 540 U.S. 950, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003); Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Cave is not entitled to relief on this claim.

C. Mental-Health and Drug-Abuse Evidence

1. Introduction
Cave argues that counsel's failure to locate Leutricia Freeman, the mother *1053 of Cave's son, who testified at the evidentiary hearing that Cave was a heavy user of heroin or to otherwise learn of Cave's heroin use was deficient performance. Cave also argues that counsel's failure to present testimony from mental-health experts to establish mental-health-related mitigating circumstances was deficient performance. Cave argues that his defense was prejudiced by these deficiencies in counsel's performance and that he is therefore entitled to relief for ineffective assistance of counsel. As we will explain below, this claim is without merit.

2. Relevant Facts
In the period between Cave's 1982 arrest and his 1996 resentencing proceeding, Cave was examined and evaluated by four mental-health experts: Dr. Rifkin, a psychologist; Dr. Krop, a psychologist; Dr. Cheshire, a psychiatrist, who examined Cave for the State; and Dr. Alegria, a psychologist. Dr. Alegria was retained by counsel to evaluate Cave for the 1996 resentencing. The other experts evaluated Cave in connection with prior proceedings, but counsel reviewed all of their reports and depositions in preparation for the 1996 resentencing.
At the postconviction evidentiary hearing, counsel testified about his decision not to present expert mental-health testimony. He testified that Dr. Rifkin's report noted that Cave did not consider his drinking to be a problem, never experienced any drinking-related problems such as blackouts or loss of control, and denied using drugs, with the exception of some marijuana. Tr. Pro. at 172. Rifkin's report found Cave's IQ to be borderline retarded, but counsel recalled Rifkin explaining that Cave's functioning ability was higher than his IQ would indicate. Id. at 174. Rifkin concluded that Cave had antisocial personality disorder, borderline intellectual functioning, and possibly a learning disability. Id.
Counsel also testified that he considered Dr. Krop's evaluation. Krop reported that Cave told him that he used marijuana and that he had experimented with heroin and cocaine. Id. at 188. Counsel testified that from Krop's report and from all the other information available to him, he got the impression that Cave was not a heroin addict. Id. at 189. Counsel also testified that Krop reported that Cave had gotten into trouble in his first few years in prison for making wine, punching another inmate, and verbal disrespect. Krop also reported that Cave was passive and nonassertive, with limited intellectual functioning, but he had no major mental illnesses or significant organic impairment. Id. at 190.
Counsel then testified about Dr. Alegria's evaluation of Cave. Counsel testified that Alegria was aware of the jail incident in which Cave severely beat a fellow inmate and that the State would be able to elicit this information from him on cross-examination. Id. at 203. He also recalled that Alegria characterized Cave as having "good common sense in 1982 at the time of the crime." Id. at 199-200. He testified that Alegria found Cave's IQ to be low/average. Id. at 201-02.
After evaluating the experts' reports and weighing the potential positive impact against the potential negative impact that presenting expert testimony could produce, counsel concluded that "the risk was [not] worth the reward." Tr. Pro. at 208. And with respect to the suggestion that he should have put on expert mental-health testimony about Cave's heroin use, counsel testified as follows:
You know, with the information I had available to me at the time ... I didn't see any basis for it. And if it required the use of an expert, I would have not wanted to use an expert for different *1054 reasons. Mr. Cave testified, and he could have testified what the effects of the drugs were at that particular time. He did. Didn't mention heroin. Yes, if there had been a factual basis to establish heroin use as material in time and affecting him at the time of this particular incident[, it] is something I would have considered. But I investigated and didn't find any evidence to support that conclusion.
Tr. Pro. at 219.
Dr. Gutman, a psychiatrist retained by Cave's postconviction counsel, interviewed Cave and testified at the evidentiary hearing. He was informed by Cave's postconviction counsel about the information gathered from Leutricia Freeman concerning Cave's extensive heroin use in the years before the crime.[12] Gutman testified that Cave's limited IQ at the time of the crimes and his limited ability to process information, when combined with the "chronic habitual use of drugs" which Cave and Freeman now report, would
cloud and affect the processing capacity awareness, ability to resist temptation and basically the whole foundation of the neurologic, neuro-behavioral processing capacity of the individual is going to be influenced by drugs and alcohol.
Tr. Pro. at 300. Gutman opined that the failure to identify and develop Cave's heroin problem was a significant omission from the medical evaluations because the "drug addiction ... clouds and colors this whole person. And it would have been important to bring that out, not just a passing flip statement, oh, he used drugs." Id. at 306.
On cross-examination, however, Gutman testified that he relied heavily on Freeman's reporting, and he admitted that she had not lived with Cave for the three-and-a-half-year period preceding the murder. Id. at 309. He also admitted that he was unaware that the woman with whom Cave lived at the time of the murder, Brenda Strachan, reported that Cave did not use heroin. Id. at 310. He also testified that he reviewed Dr. Rifkin's 1982 report, where Rifkin wrote that Cave denied using drugs with the exception of some marijuana, id. at 315, and Dr. Krop's 1988 report, where Krop reported that Cave reported experimenting with heroin but not in chronic usage. Id. at 320.

3. Analysis
As we noted above, to prevail on a claim of ineffective assistance of counsel, Cave must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Cave must demonstrate that counsel's failure to present evidence of his heroin use or his failure to present expert mental-health testimony amounted to deficient performance; that is, that it "fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052. If he can demonstrate deficient performance, he then must demonstrate that counsel's deficient performance prejudiced his defense. To do this, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. In Strickland, the Court explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Because both prongs of the Strickland test present mixed questions of law and fact, we employ a mixed standard of review, *1055 deferring to the circuit court's factual findings (if they are supported by competent, substantial evidence) but reviewing the circuit court's legal conclusions de novo. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999).
Cave's claim is without merit. We agree with the circuit court that counsel's decision not to present expert mental-health testimony was a reasonable strategic decision made after fully considering the reports and depositions of the four experts who evaluated Cave and weighing the benefits to be gained from presenting such testimony against the damaging information that the State would be able to elicit from the experts on cross-examination.
We also agree that counsel's failure to learn of Cave's alleged heroin abuse cannot be considered deficient performance because neither Cave nor Cave's relatives ever told counsel or any of the experts who evaluated Cave about the extent of Cave's heroin use. Between 1982 and 1996, Cave was interviewed and evaluated by four different mental-health experts, and he did not report to any of them a history of heroin abuse anywhere near as significant as that now reported by Freeman, nor did he ever tell counsel of such a drug-use history.[13]

D. Counsel's "Overall" Performance
Finally, as grounds for relief based on ineffective assistance of counsel, Cave argues that he was not "well represented" by counsel at his 1996 resentencing. He cites a number counsel's acts and omissions that he claims were deficient, and he argues that, taken individually or collectively, these deficiencies prejudiced his defense. He cites the following: counsel's performance at voir dire, specifically his failure to object to what he claims was a misleading question to the venire panel; counsel's failure to adequately prepare Cave and Cave's mother for their testimony; and counsel's introduction of the fact of Cave's prior arrest, as well as his failure to object when the State later elicited the nature of the charge on which Cave had been arrested.[14]
To prevail on any of these claims, Cave must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that the particular acts or omissions amounted to deficient performance; that is, that the performance "fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052. And if he can demonstrate deficient performance, he then must demonstrate that this performance prejudiced his defense. To do this, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. In Strickland, the Court explained that "[a] reasonable probability is a probability sufficient to *1056 undermine confidence in the outcome." Id. Because both prongs of the Strickland test present mixed questions of law and fact, we employ a mixed standard of review, deferring to the circuit court's factual findings (if they are supported by competent, substantial evidence) but reviewing the circuit court's legal conclusions de novo. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999).

1. Voir-Dire Performance
Cave argues that counsel was ineffective for failing to object to what Cave claims were prejudicially misleading hypothetical questions by the State to the members of the venire panel. Specifically, he argues that counsel should have objected when the State asked potential jurors questions such as, "If you were to find that Cave was not the shooter...."[15] Cave argues that this question was misleading because the State knew that Cave was not the shooter and did not plan to argue that he was.
This claim is without merit. Cave suggests that the State was trying somehow to mislead the jury with this particular hypothetical, but it seems clear that the State simply was trying to determine which potential jurors could apply the law and consider the death penalty for someone guilty of felony murder who did not himself pull the trigger and which potential jurors would be unable even to consider a death sentence in such a situation. Counsel's failure to object to this hypothetical question was not deficient.[16] It is also unclear how Cave was prejudiced. He does not allege that any of the jurors who sat in his case should have been struck for cause; nor does he allege that any of the jurors who were struck for cause should not have been struck for cause.

2. Preparation for Testimony
Cave argues that counsel did not adequately prepare either Cave or Cave's mother for their testimony. Both claims are without merit. Counsel testified at the evidentiary hearing  and his testimony was not refuted  that he began to consult with Cave about the possibility of Cave testifying as soon he began to represent Cave, and that they discussed his testimony at every opportunity. Furthermore, Cave has not alleged how his defense was prejudiced by the level of preparation he received. His allegations are simply conclusory.
Cave's claim that counsel's preparation of Cave's mother (Hines) was ineffective is also without merit. The circuit court found that counsel did provide Hines, prior to her taking the stand, with a copy of her past statements and testimony and that counsel and Hines talked about her testimony on several occasions. The court also found that Cave's mother resisted counsel's attempts to help her read those documents. These findings are supported by competent, substantial evidence.
*1057 Furthermore, even if counsel's preparation of Hines or his decision to have her testify was deficient, the only prejudice that Cave alleges is that Hines testified on cross-examination that she previously had testified that Cave confessed to her that the victim begged for her life. This testimony, although certainly not helpful to Cave, was cumulative. Detective Jones testified about the same fact: he testified that Cave confessed to him that "while they were leaving the store ... and in route to ... the murder scene, Frances Slater begged for her life inside the motor vehicle. She stated that if they would let her go that she would do anything, that she wanted to be let free." Tr. Resent. Trial at 1245. Cave has not established prejudice under the Strickland standard.

3. Prior Arrest
At the 1996 resentencing proceeding, counsel asked Cave the following questions on direct examination, which revealed that Cave had been arrested in the past:
Q: Now before April 26th of 1982 had you ever been convicted of any crimes?
A: No, I have not.
Q: You were arrested one time, weren't you?
A: Before 1982? Oh, yes. Yes, I was.
Q: Was that a  were you guilty of what you were charged with?
A: No, that was in Stren, Pennsylvania and no I was not guilty.
Q: Were you released on your own recognizance?
A: Yes, I was.
Q: Were [the] charges dropped?
A: Yes, they was.
Q: So apart from that particular incident in Pennsylvania, had you ever been arrested at any time?
A: No, never been arrested.
Tr. Resent. Trial at 1361.[17]
On cross-examination, the State asked the following questions relating to the nature of Cave's prior arrest and Parker and Bush's criminal histories, to which counsel made no objections:
Q: Now you had an arrest, your lawyer brought out that you had an arrest. What was that for?
A: That was in Pennsylvania.
Q: And what was the charge?
A: The charge was rape.
Q: But that was dropped?
A: That was not only dropped, sir, that [was] proven to be a false charge.
....
Q: But as opposed to these other guys [Bush and Parker], they had been convicted.
A: Yes.
Q: But you had not? But in your mind they weren't really any different than you because you didn't know about their charges?
A: No, I never knew about their criminal past. I knew they smoked reefer like me.
Id. at 1451-52.
Cave alleges three separate instances of ineffective assistance of counsel in connection with these colloquies. First, he claims that counsel was ineffective in bringing out his prior arrest. Second, he claims that *1058 counsel was ineffective in not objecting when the State, on cross-examination, elicited from Cave that the arrest was on a charge of rape. And third, Cave claims that if the fact and nature of Cave's prior arrest properly could have been introduced by the State to rebut the mitigating factor of lack of significant history of prior criminal activity, then counsel's decision to seek that mitigator constitutes ineffective assistance. Each of these claims is without merit.
First, counsel was not deficient for preemptively introducing evidence of Cave's prior arrest. When a defendant seeks to establish the no-significant-history mitigator, the State is allowed to rebut the mitigator with direct evidence of past criminal activity, including arrests. See, e.g., Lucas v. State, 568 So.2d 18, 22 n. 6 (Fla.1990) ("Arrests and other evidence of criminal activity, without convictions, may be `significant' and may rebut this mitigator."). Counsel testified that by introducing the past arrest himself, he was preempting the State and avoiding the impression that Cave was hiding something. Furthermore, counsel's decision to seek the no-significant-history mitigator, even though doing so opened the door to the introduction of Cave's prior arrest, was not deficient. Counsel's key argument in mitigation was that Cave was not as culpable as his cohorts. This argument rested on two related premises: first, that Cave did not actually shoot or stab the victim and that he did not intend that the victim be killed; and second, that because of his criminal naiveté and the fact that he was unaware of his cohorts' more sophisticated criminal pasts, Cave could not have reasonably foreseen that his cohorts would kill the victim. Establishing the no-significant-history mitigator was crucial to this strategy, and if counsel had opted not to pursue it, it not only would have undercut that argument, but it also would have left Cave facing five aggravating circumstances without any statutory mitigating circumstances. For this reason, we cannot say that counsel's decision to seek the mitigator, knowing that the jury would hear about a prior arrest, even if the jury would also learn that the arrest was on a charge of rape, was objectively unreasonable.[18]
For the same reason, Cave cannot demonstrate prejudice. Cave argues that counsel should not have sought the no-significant-history mitigator and should not have argued that Cave lacked the criminal sophistication and experience to put him at the same level as Parker and Bush. Doing so would have kept the jury from learning of the prior arrest, but it also would have taken Cave's one statutory mitigator off the table and would have essentially undercut the entire theory of the defense.
Cave's other argument  that counsel's failure to object when the State elicited the nature of the past arrest constituted ineffective assistance  is more difficult, but we conclude that this too is without merit. Even if counsel's performance in this respect was deficient, Cave is not entitled to relief because he has not demonstrated prejudice. Cave has not "show[n] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [penalty-phase] proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. When asked about the prior arrest on direct examination, Cave made clear that the charge was "dropped" and he "was not guilty." Tr. Resent. Trial at 1361. And *1059 after he revealed on cross-examination that the charge was rape, he reiterated that "not only [was that charge] dropped... [it was] proven to be a false charge." Id. at 1451. We recognize that Cave's protestations of innocence may not have been all that convincing to the jury, but the fact remains that the court did find that the no-significant-history mitigator had been established, and the judge's decision to accord it little weight did not rely on or even cite the past arrest. In fact, even the State conceded in closing argument that the no-significant-history mitigator had been established. And in arguing that the jury should assign little weight to that mitigator, the State never once mentioned the past arrest, let alone the nature of that arrest. Rather, the State argued that "this mitigating circumstance pales when compared with any of those five aggravating circumstances that we just went over." Tr. Resent. Trial at 1729.[19] Counsel's failure to object when the State asked Cave about the nature of his past arrest might well have amounted to deficient performance, but Cave has not demonstrated that he was prejudiced by the deficiency under the Strickland standard.

III. CONCLUSION
For the reasons expressed above, we affirm the circuit court's denial of Cave's motion for postconviction relief.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found that the murder was committed in the course of a robbery and kidnapping; that the murder was especially heinous, atrocious, or cruel (HAC); and that the murder was committed for the purpose of avoiding lawful arrest. Cave I, 476 So.2d at 187-88.
[2] Both the district court and the court of appeals held that Cave's counsel's guilt-phase performance was deficient but not prejudicial. Although Cave's counsel appeared not to understand the elements of felony murder (i.e., she did not appear to understand that conceding that Cave was guilty of the robbery that led up to the killing  but emphasizing that he did not actually kill the victim  would result in a first-degree-murder conviction), in light of Cave's confession not even "a highly competent lawyer could ... have won Cave an acquittal." Cave III, 971 F.2d at 1518. Both courts, however, held that counsel's failure to present any evidence at the penalty phase was both deficient and prejudicial. Id. at 1519.
[3] The trial court found that the murder was committed in the course of a robbery and kidnapping; that the murder was committed for the purpose of avoiding lawful arrest; that the murder was committed for pecuniary gain; that the murder was especially heinous, atrocious, or cruel; and that the murder was committed in a cold, calculated, and premeditated manner (CCP). Cave v. State, 660 So.2d 705, 706 n. 1 (Fla.1995) (Cave IV).
[4] Cave executed a written waiver of statutory mitigation. The trial court found, as nonstatutory mitigation, that Cave may not have been the person who actually shot the victim; that the State argued at the trials of Cave's codefendants that a codefendant other than Cave had been the shooter; that Cave is a loved and valued family member; and that Cave confessed. Id. at 706 n. 1.
[5] The trial court found that the murder was committed in the course of a robbery and kidnapping; that the murder was especially heinous, atrocious, or cruel; that the murder was committed in a cold, calculated, and premeditated manner; and that the murder was committed to avoid arrest. Cave v. State, 727 So.2d 227, 228 n. 1 (Fla.1998) (Cave V).
[6] The trial court found that Cave did not have a significant history of prior criminal activity. Id. at 228 n. 2.
[7] The trial court found that Cave was remorseful; that Cave was not the shooter; that Cave once saved someone's life; that Cave was under the influence of alcohol or marijuana at the time of the crimes; that Cave was a good son, neighbor, worker, and father; that Cave's only son died as a result of a criminal act; that Cave has improved himself in prison; and that Cave confessed to his role in the crimes. Id. at 228 n. 3.
[8] We also rejected Cave's claim that neither the CCP, HAC, or avoid-arrest/witness-elimination aggravators were supported by the evidence. We held that the trial court applied the correct rule of law in analyzing these aggravators, and that its findings were supported by competent, substantial evidence. Id. at 229-30. We also rejected Cave's claim that the trial court erred in assigning little weight to the mitigator of no significant history of prior criminal activity because "of the enormity of the crimes committed in this episode." Id. at 230. We held that the trial court did not abuse its discretion. Id.

We also rejected Cave's claim that the trial court erred in failing to find Cave's "minor participation" in the crimes as a mitigating circumstance. The trial court found that this circumstance was not established, noting that Cave's "role in this murder ... included leadership activities." Id. at 230. In support of this finding, the trial court noted that Cave
participated in casing out the convenience store, he carried the gun throughout the robbery and the kidnapping, and only relinquished it to Parker for the execution. [Cave] personally directed the victim out of the store and into the car. He held her captive in the back seat during her pleas for her life. He got her out of the car and turned her over to Bush and Parker who promptly stabbed and shot her.
Id. We held that the trial court's finding was supported by competent, substantial evidence. Id. at 230-31.
[9] Cave raised the following claims in his motion for postconviction relief: (1) that trial counsel was ineffective for introducing via testimony from Cave that Cave previously had been arrested, and that counsel's ineffectiveness was exacerbated when counsel failed to object when, on cross-examination, the State elicited the nature of the charge, which was rape; (2) that trial counsel could not adequately represent Cave due to a direct conflict of interest; (3) that trial counsel was ineffective for failing to introduce expert mental-health testimony to establish statutory and nonstatutory mitigating circumstances, such as Cave's alcohol and drug abuse, minimal education, borderline-retarded intelligence, inability to lead, and suggestibility; (4) that Florida's capital-sentencing scheme is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (5) that trial counsel was ineffective for basing his entire trial strategy, in which he attempted to limit the State to presenting only circumstantial evidence of the aggravating factors while he presented direct evidence of mitigating circumstances, on his miscalculation that this Court on direct appeal would apply a standard of review for circumstantial evidence that was more defense-friendly and less deferential than the typical "competent, substantial evidence" standard; (6) that Cave was prejudiced by a direct conflict of interest arising from the fact that before Cave's initial trial, when Cave and his codefendants were all represented by the same public defender's office, the psychologist retained to examine Cave was also retained to examine Cave's codefendants; (7) that trial counsel was ineffective for failing to adequately prepare Cave before he testified; (8) that trial counsel was ineffective for having Cave's mother testify and for failing to adequately prepare her before she testified; (9) that trial counsel was ineffective for failing to present evidence as to the probability that Cave would be paroled if he received a sentence of life imprisonment; (10) that trial counsel was ineffective for failing to adequately investigate and then adequately review with and explain to Cave the State's plea offer, under which Cave would have received a life sentence but (for parole-eligibility purposes) would have waived his credit for time already served; (11) that trial counsel was ineffective throughout the sentencing proceeding, particularly for (a) failing to adequately prepare for and conduct voir dire; (b) failing to inform the jury that Cave's sentencing process had to be an individualized process focusing on Cave's own culpability; (c) failing to inform the jury that the mere fact of conviction did not mandate a death sentence; (d) failing to inform the jury during voir dire or opening statement of the strength of the mitigating circumstances and then failing to introduce substantial evidence of mitigating circumstances, such as the fact that Cave was not the shooter, that he was not "the ringleader," that he did not have a prior criminal record, that he was under the influence of drugs and alcohol, that he had a low IQ, that his functioning abilities were severely hindered by years of drug and alcohol abuse, that due to low intelligence he was incapable of planning, organizing, and carrying out the criminal episode, and that neither the gun nor the car was his, nor was the gun in his possession at the time the victim was killed; (e) failing to inform the jury during voir dire or opening statement of the weakness of the aggravating circumstances and then failing to introduce substantial evidence that would rebut the aggravators, particularly the HAC and CCP aggravators; and (f) failing to object when the State asked the "if it were shown that Cave was not the shooter" hypotheticals, even though the State knew that Cave was not the shooter and had no intention of arguing that he was; (12) that trial counsel was ineffective for failing to make an opening statement and failing to object to several erroneous and prejudicial portions of the State's opening statement; (13) that trial counsel was ineffective for failing to effectively refute the CCP aggravator, even though there was scant evidence to support it; (14) that trial counsel was ineffective for failing to effectively refute the HAC aggravator, even though there was scant evidence to support it, particularly as to Cave, who was not the actual killer; (15) that trial counsel was ineffective for failing to preserve the testimony of codefendant Bush by deposing him before he was executed and for failing to object when the State told the jury during closing arguments what it thought Bush would say if he were alive to testify; and (16) that trial counsel was ineffective for failing to object to numerous improper arguments by the State in closing argument.
[10] At the hearing, Cave presented the testimony of his trial counsel (Jeffrey Garland), the mother of his deceased son (Leutricia Freeman), a psychiatrist who evaluated him for the postconviction evidentiary hearing (Dr. Michael Gutman), a private investigator retained by postconviction counsel (Donald Carpenter), his mother (Connie Hines), and codefendant Bush's former attorney (Steven Kissinger). The State did not present any witnesses.
[11] Cave filed a motion for rehearing, arguing that codefendant Bush's "deathbed statement," which was revealed during Kissinger's evidentiary-hearing testimony, was "newly discovered evidence." At the evidentiary hearing, Kissinger testified that before Bush was executed, Bush made a "dying declaration" in which he told Kissinger that Cave had attempted to dissuade the others from killing the victim and, when unsuccessful, he withdrew to the car and took no part in the killing. Cave argued that this newly discovered evidence, had it been known at trial, would have changed the outcome, and that counsel's failure to depose Bush before he was executed or to ask Kissinger about the contents of the dying declaration amounted to ineffective assistance of counsel. Cave argued that Bush's dying declaration was relevant not only to the proper sentence Cave should receive but also called into question his first-degree-murder conviction. The circuit court denied Cave's motion for rehearing, noting that it heard and considered Kissinger's testimony about Bush's statement at the evidentiary hearing.
[12] Freeman testified at the evidentiary hearing that she had a child with Cave and lived with Cave, and during that time, Cave never worked and heavily used drugs. Tr. Pro. at 269-76. On cross-examination, however, she testified that she lived with Cave in 1978 or 1979, three to four years before the murder. Id. at 280-82.
[13] We need not consider the prejudice prong because Cave has failed to demonstrate that counsel's performance was deficient.
[14] Cave also cites counsel's failure to present Bush's deathbed statement and counsel's overall strategy of not presenting expert mental-health testimony, which was based, Cave argues, on counsel's misunderstanding of the circumstantial-evidence rule. These two claims have already been addressed individually. (The latter claim is really just a reargument of the issue discussed in section II.C., where we held that counsel's decision not to introduce any expert mental-health testimony did not constitute deficient performance.) We also reject the claim that all of these issues, those addressed above and those which we are about to address, cumulatively constitute ineffective assistance of counsel. See Bryan v. State, 748 So.2d 1003, 1008 (Fla.1999) ("[W]here allegations of individual error are found without merit, a cumulative-error argument based thereon must also fail.").
[15] For instance, the State asked one prospective juror the following question:

If the judge were to instruct you that if more than one person was found guilty of the crime as in this case, but that if the evidence showed that only one of the people actually pulled the trigger that caused the death of Frances Julia Slater, and if you found that the evidence showed that it was not [Cave] that actually pulled the trigger, could you if there were sufficient aggravating circumstances not outweighed by the mitigating circumstances, could you still vote to recommend death.
In other words, the fact that [Cave] may not be the one who actually pulled the trigger, would that in and of itself automatically prevent you from recommending death?
Tr. Resent. Trial at 260-61 (emphasis added).
[16] In fact, Cave does not even support the contention that the State's question was improper.
[17] Counsel also introduced into evidence records of Parker and Bush's criminal histories to contrast their histories with Cave's. Cave testified that if he had known about Parker and Bush's criminal histories, he would not have been associating with them on the night of the crime. Id. at 1349-1352, 1392-95.
[18] It is important to note that there were no allegations or insinuations by the State that rape or sexual assault were at issue in this case.
[19] The following is a relevant excerpt from the State's closing argument:

Let's go through these mitigating circumstances. The first one, the Defendant has no significant history of prior criminal activity. Although this Defendant did not have any prior convictions before the murder, I've got to submit to you that this mitigating circumstance pales when compared with any of those five aggravating circumstances that we just went over....
If this Defendant had merely been along for the ride, like Terry Wayne Johnson, and had not taken an active role as the leader, then perhaps he should receive the benefit of a sentence of life imprisonment without parole for 25 years. And perhaps if this Defendant's actions demonstrated a lack of any plan and the naivete that we would expect of a criminal new comber [sic], this mitigating circumstance might then be entitled to more weight. But when the Defendant is the leader and he's the gunman of the robbery, and he's the man who personally abducted the victim at gunpoint, the man who controlled the victim's faith [sic] and who demonstrates through his actions that he is in charge of the crime, and the decision maker, then he should not benefit from this mitigating circumstance. He wants to use it to obtain a first freebee [sic]. He wants his first murder to be a given  a give me. And I submit to you that that's not what this was designed to do.
... Yes, he had no prior criminal history. But I submit to you that that mitigating factor does not measure up against any one of the aggravating circumstances that been established....
Tr. Resent. Trial at 1729-34.